UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                             CRIMINAL NO. 3:16-CR-98-DPJ-FKB

LESTER LEVELL SINGLETON

ORDER

This case is before the Court on Defendant Lester Levell Singleton's motion to vacate filed under 28 U.S.C. § 2255. Having now received an affidavit from Singleton's former attorney, John Colette, the Court concludes that Ground Five should be denied; an evidentiary hearing is necessary as to Grounds One through Four; and Singleton should be appointed counsel under Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

I.     Procedural History

Singleton was named in a six-count indictment returned by a federal grand jury in the Northern Division of the Southern District of Mississippi on December 7, 2016. *See* Indictment [4]. Count Two charged Singleton with knowingly and intentionally importing a Schedule I controlled substance. On November 28, 2017, Singleton pleaded guilty to Count Two and signed a plea agreement.

On February 25, 2019, Singleton filed a five-ground § 2255 Motion [99] based on ineffective assistance of counsel. Singleton claims Colette: (1) failed to adequately tally the amount of controlled substance attributable to Singleton; (2) failed to adequately argue for a downward variance; (3) failed to timely respond to a request to file a notice of appeal; (4) failed to file a timely notice of appeal; and (5) failed to adequately explain plea-agreement terms. *See* Def.'s Mem. [100] at 2–4.

II. Standards

    A. 28 U.S.C. § 2255

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Relief under . . . § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

Here, Singleton says his attorney provided ineffective assistance of counsel. An "ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Although Singleton's plea agreement contained a general waiver of the right to file a motion under § 2255, it provided that Singleton "reserves the right to raise ineffective assistance of counsel claims." Plea Agreement [54] ¶ 8. So the waiver is no bar to the current motion.

    B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must generally show (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) this ineffectiveness was "prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Regarding ineffective assistance in the plea context, the defendant must show

a "reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Regarding the alleged failure to file an appeal, the prejudice prong "is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)). This presumption applies even when—as here—the defendant waived his right to appeal. *Id.*; *see also United States v. Tapp*, 491 F.3d 263, 265 (5th Cir. 2007) (same).

### C. Right to Hearing

Finally, Singleton is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Relevant here, "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981), *quoted in United States v. Noble*, 73 F. App'x 669, 670 (5th Cir. 2003).

## III. Analysis

Grounds One and Two address Colette's performance leading up to and at the sentencing hearing. Grounds Three and Four assert that Colette failed to file a requested notice of appeal. Finally, Ground Five asserts that Colette failed to explain the appeal waivers found in the plea agreement. The Court will work backwards and start with the appeal waivers.

### A. Appeal Waivers

Singleton asserts that he "was unaware that he had waived his right to appeal when he signed the plea agreement as encouraged by counsel." Def.'s Mem. [100] at 4. He blames Colette for his ignorance of the terms, contending that he was shown the document at the plea

3

hearing and was never provided ample time to read it. *Id.* at 16. The record fails to support this account.

To begin, the plea agreement itself includes the following language:

> 8. **Waivers.** Defendant, knowing and understanding all of the matters aforesaid, including the maximum possible penalty that could be imposed, and being advised of Defendant's rights to remain silent, to trial by jury, to subpoena witnesses on Defendant's own behalf, to confront the witnesses against Defendant, and to appeal the conviction and sentence, in exchange for the U.S. Attorney entering into this plea agreement and accompanying plea supplement, hereby expressly waives the following rights (except that Defendant reserves the right to raise ineffective assistance of counsel claims ~~and the right reserved in paragraph 10 of the Plea Supplement~~): EOC [initials] LS
>
>   a. the right to appeal the conviction and sentence imposed in this case, or the manner in which that sentence was imposed, on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever, and

Plea Agreement [54] at 5.[1] The agreement then states, in bold font, "**Defendant waives these rights in exchange for the United States Attorney entering into this plea agreement and accompanying plea supplement**." *Id.* at 6. The agreement concludes by confirming the following just above Singleton's signature:

> Defendant and Defendant's attorney of record declare that the terms of this plea agreement have been:
>
>   1. READ BY OR TO DEFENDANT;
>   2. EXPLAINED TO DEFENDANT BY DEFENDANT'S ATTORNEY;
>   3. UNDERSTOOD BY DEFENDANT;
>   4. VOLUNTARILY ACCEPTED BY DEFENDANT; and
>   5. AGREED TO AND ACCEPTED BY DEFENDANT.
>
> WITNESS OUR SIGNATURES, as set forth below.
>
> D. MICHEAL HURST, JR.
> United States Attorney
>
> /s/ Erin O. Chalk                                              11/28/17
> Erin O. Chalk                                                   Date
> Assistant United States Attorney
>
> /s/ Lester Singleton                                          10/11/17
> Lester Levell Singleton                                      Date
> Defendant

---

[1] Singleton initialed the waiver "LS" (seen in blue).

*Id.* at 7.

In addition to these written declarations, Singleton confirmed this understanding during his plea hearing. To begin, Singleton made his verbal representations under oath and had the intelligence and mental capacity to understand what he was saying:

> THE COURT: All right. Mr. Singleton, you understand that you're now under oath?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand that your answers to my questions have to be truthful?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that if they're not truthful that you might subject yourself to further prosecution for giving a false statement?
>
> THE DEFENDANT: Yes, sir.

Plea Tr. [98] at 3.

> THE COURT: How far did you go in school?
>
> THE DEFENDANT: I graduated from Jackson State University with a bachelor of science in business administration.

*Id.* at 4.

The hearing transcript also confirms that Singleton and Colette thoroughly discussed the plea agreement and that Singleton was not rushed:

> MR. COLETTE: May it please the court, Judge, I've met with my client numerous occasions as late as yesterday for approximately an hour and a half going over procedures for today. . . . We've discussed the plea, his options for trial, his potential defenses. We've discussed the guidelines, the calculations therein. I've had no problem with him misunderstanding or being incoherent.

*Id.* at 8.

> THE COURT: All right. Mr. Singleton, are you satisfied with the time you've had to spend with your attorney?

5

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the amount of time your attorney has spent on your case?

THE DEFENDANT: Yes, sir.

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney, Mr. Colette?

THE DEFENDANT: Yes, sir.

THE COURT: All right. If you have any complaints about your attorney, today's the best day to let us know. Do you have any kind of complaints?

THE DEFENDANT: No, sir.

*Id.* at 10–11.

THE COURT: All right. My understanding is that you've reached an agreement with the government that's reflected in two documents, a plea agreement and a supplement. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And did you have a chance to read and fully discuss both of those documents before you signed them?

THE DEFENDANT: Yes, sir, I did.

THE COURT: And you had a chance to ask Mr. Colette any questions that you might have had about what was contained in those documents?

THE DEFENDANT: Yes, sir.

THE COURT: And was he able to answer your questions for you?

THE DEFENDANT: Yes, sir, he was.

THE COURT: Okay. Is there anything left in either document that you're unsure about or fuzzy about or that you want somebody to explain better?

THE DEFENDANT: No, sir.

> THE COURT: You completely understand what you've agreed to with the government?
>
> THE DEFENDANT: I fully understand.
>
> THE COURT: Okay. Mr. Colette, again have you had that conversation, and does your client understand the terms of his agreement with the government?
>
> MR. COLETTE: I have, Your Honor, and I believe he does.

*Id.* at 11–12.

When the Court asked the prosecutor to describe the terms of the agreement in open court, she did little more than recite the very terms Singleton now says he never knew. In particular, she read paragraph 8 of the plea agreement in which Singleton waived "the right to appeal the conviction and sentence or the manner in which that sentence was imposed under any ground whatsoever." *Id.* at 14.

Singleton confirmed that the prosecutor's statements were consistent with his understanding. *Id.* at 15. Nevertheless, the Court addressed those same issues again:

> THE COURT: And in particular, Ms. Chalk mentioned some waivers. Those are things that you're giving up in paragraph 8 and its subparts, A through E, including the right to appeal the conviction and sentence imposed in this case or the manner in which the sentence was imposed on any grounds whatsoever or the right to contest those same issues in any postconviction proceeding, including but not limit [sic] to a motion brought under Title 28 of the United States Code Section 2255. Again, have you discussed those waivers with Mr. Colette?
>
> THE DEFENDANT: Yes, sir, Your Honor.
>
> THE COURT: Do you understand what you're giving up there in paragraph 8 and its subparts?
>
> THE DEFENDANT: Yes, sir, I do, Your Honor.
>
> THE COURT: Are you knowingly and voluntarily agreeing to those waivers along with all of the other terms of both the plea and the plea supplement?
>
> THE DEFENDANT: Yes, Your Honor.

7

*Id.* at 16.

"[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). Given this overwhelming record, the Court cannot accept Singleton's after-the-fact claim that he never really read the plea agreement and did not know that he was waiving the right to appeal his sentence. No hearing is necessary to reach this conclusion.

B.     Whether Colette Was Ineffective for Failing to File a Notice of Appeal

Singleton and Colette tell very different stories about their appeal discussions and whether Singleton instructed Colette to file a notice of appeal. According to Singleton he did, but Colette claims that Singleton's various assertions are "false." Colette Aff. [192] ¶ 2; *see also id.* ¶¶ 5, 6, 8, 9 (rejecting Singleton's factual assertions).

The Government encourages the Court to accept Colette's version and factually reject Singleton's verified complaint without an evidentiary hearing. *See* Gov't's Resp. [103] at 7–8. But such an approach invites reversible error. *See United States v. Higgins*, 459 F. App'x 412, 413 (5th Cir. 2012) (remanding for evidentiary hearing because district court failed to hold hearing before rejecting defendant's claim that he instructed counsel to file notice of appeal); *Tapp*, 491 F.3d at 266 ("Because the record in the instant case does not conclusively show whether Tapp requested that his counsel file an appeal, we vacate the district court's judgment denying Tapp's § 2255 petition and remand for an evidentiary hearing on this issue."). The record does not conclusively show that Singleton failed to request a notice of appeal, and

8

"contested fact issues ordinarily may not be decided on affidavits alone." *Hughes*, 635 F.2d at 451. Grounds Three and Four must be heard at an evidentiary hearing.

C. Collette's Performance During Sentencing Phase

Grounds One and Two relate to the sentencing phase. In particular, Singleton says Colette failed to properly object to the PSR or argue during the hearing that the drug-conversion ratio was incorrect or that the drug quantities improperly included inert materials.

As to the inert-materials claim, Singleton contends that he provided Colette the necessary information to show that inert materials were improperly counted. Def.'s Mem. [100] at 2–3, 12. Yet when the issue came up at the sentencing hearing, Colette could not answer the Court's inquiry whether inert materials were actually counted in the PSR. *See* Sentencing Tr. [97] at 10, 11.

Colette never addresses this issue in his affidavit or whether Singleton gave him the information necessary to answer the Court's questions. Similarly, the Government's response focuses primarily on the conversion-ratio issue rather than the inert-materials claim. *See* Gov't's Resp. [103] at 2–4. The record does not, therefore, conclusively show that Singleton is entitled to no relief on the inert-materials issue. A hearing is necessary. Finally, Singleton attempts to legally link the inert-materials issue to the conversion-ratio issue. And because the former must proceed to a hearing, the latter will be carried with it.

IV. Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Singleton's Motion to Vacate [97] is denied as to Ground Five. Grounds One through Four will be heard at an evidentiary hearing. Pursuant to Rule 8(c) of the Rules Governing § 2255 Proceedings, the magistrate judge shall
9

appoint counsel to represent Singleton for purposes of the evidentiary hearing. Once counsel is appointed, the parties shall contact Courtroom Deputy Shone Powell to set Grounds One through Four for an evidentiary hearing.

**SO ORDERED AND ADJUDGED** this the 14th day of May, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE